Dissenting Opinion.
Fenner, J.
I am compelled to dissent from the opinion and decree herein, and adopt as my reasons therefor the opinion rendered by the learned judge a quo, which is as follows:
“The relators, Hope & Co., allege that they are holders of bonds amounting to $4,018,626.48, for which the State of Louisiana is liable, and which they have the legal right to exchange for consolidated bonds of the State, in the ratio, and at the rate of interest prescribed by the Funding Act of 1874, and the statutory and constitutional modifications thereof since adopted.
“That desiring so to exchange their said bonds, they have surrendered them into the custody of the Board of Liquidation of the State Debt, and have, in accordance with the rules of procedure established by said board, made formal application to it for the funding and exchange aforesaid; but that the said board have failed and refused to assemble and act upon said application, although this is a duty devolved upon them by law.
“They, therefore, by this suit, ash that a peremptory writ of mandamus do issue, requiring said board to meet and act upon their offer and demand for the funding of their said bonds. The alternative writ having issued, said Board of Liquidation have made return thereof by the Attorney General, in effect, that the members of said board are also members of the executive department of the State government; that their official acts as said board are official acts of said executive department, and, therefore, that the court is without power to require said board to meet, or to fix a time of meeting, or to direct what business it should consider; the power and duty of convening it resting in the executive and not with the judi - ciary branch of the government.
“ For further return they declare, but without waiver of their denial of jurisdiction in the court, that they are charged with discretionary power as to their assembling for the business of the nature proposed by relators; “having in view the public interest, and the preservation of the public credit;” that, on its face, relators’ appli *660 cation shows that they have rejected their privileges under the Funding Act of 1874,if any they had, which is denied; that the legislative appropriation, biennially made since 1880, and annually made prior to said year, to pay the interest ,ori the State -debt, have not embraced provisions for the bonds of relators, and that, not having availed of said Act of 1874, nor moved until the year 1888, thereunder, relators can not, at their own will and convenience, and regardless of the public weal, require a meeting of the Board of Liquidation as they are attempting; that the Legislature will not be in session until May, 1890, and the present time is inopportune; and finally, that the executive is charged with the conservation of the public welfare and the execution of the laws of the State, and must act upon his official discretion, in the exercise of which he has the constitutional guarantee of immunity.
“The issues as made up, as I understand them, present the legal question: (1) Whether the judiciary of the State has power to compel thedefendant board to assemble, and act upon the application of any holderof evidences of the State’s indebteness, claimed to be fund-able under the Funding Act of 1874 and its amendments; and (2) whether the tardiness of relators, in making application to fund their bonds, they having delayed from the year 1874, when the Funding Act was passed, up to the year 1888, is not good cause why the Board of Liquidation should not meet, or act, at this inopportune time, for the reason, that provision has not been made to meet the interest that would be due on relators’ bonds, if funded, and can not be made until in May, 1890, the effect of all which might be to make the State a defaulter, quoad said interest, to the serious detriment of its financial credit, and the injury of all holders of its valid and outstanding securities.
“The evidence fully sustains relators’ allegations as to the surrender of their bonds to the defendant board, and their formal application for a meeting of said board audits action thereupon for the funding and exchange of said bonds, as also, that they have failed to obtain such meeting and action.
“ The matters relied upon by defendant board are within the judidicial cognizance and required no proof.
“ The first question raised, i. e., whether the court has jurisdiction, is dependent on the further question, whether or «.ot the defendant *661 board is a part of the executive department of the State government, and as such called upon to act touching the matters under consideration, within the sphere of their duties, as such executive officers.
“If yes, and, in these executive duties, they have discretionary power, it is manifest that the judiciary, a co-ordinate branch of the government, could have no authority whatsoever. State Constitution, Arts. 14, 15.
“Desiring to avoid even the appearance óf willingness to interfere in the slightest degree with the functions of either of the other departments, I have, as a judge, carefully considered the authorities relied upon by the Attorney General, and the arguments addressed with reference to the distribution of the governmental powers of the State.
“ Having them in mind, the inquiry arises, what is the composition of the Board of Liquidation, and what are its legal functions and powers ?
“ By the Funding Act No. 8 of 1874, and the amendments thereto of 1875, the Governor, Lieutenant Governor, Secretary of State, Auditor and Treasurer (all of whom are by Art. 58 of the Constitution designated as composing the executive department), the Speaker-of the House of Representatives (by same designation a legislative officer), the President of the New Orleans Cotton Exchange and the Fiscal Agent of the State (who are without constitutional designation, were constituted a body politic, to be known as the Board of Liquidatian of the State debt.
“The duties of the foregoing State officers were to ‘ cause to be prepared,’ and of said board, to issue bonds'to be known as consolidated bonds, in exchange for all valid outstanding bonds, and certain valid outstanding warrants of the State, at 60 cents of the consolidated bonds for §1 of said outstanding bonds and warrants; with the proviso, that the holders of any bond or warrant, rejected by the majority of said board, ‘may apply by petition to any court for relief, and if final judgment shall be rendered in his favor, against said board, it shall be the duty of said board to fund said claim in bonds, at the rate provided in this act.”
By the supplementary Act No. 11 of 1875, the Board of Liquidation was prohibited from issuing any consolidated bonds for any outstanding bonds,, or warrants, the legality or validity of which may have been, or might thereafter, be questioned, “until said bonds, or- *662 •warrants shall first, by final deoree of the Supreme Court of the State of Louisiana, have been declared legal and valid obligations against the State,” etc.; and the right of action against the board was given to any tax payer, to institute a suit, or to intervene in any suit to test such questioned bonds.
The act then enumerated by special recital certain bonds and warrants, which were declared “ questioned.”
It is also provided that a majority of the board should be required to perform an official act.
For misconduct in their duties the members of said board were subjected by the former act to prosecution • and punishment before the courts.
Now, in these laws I find nothing which identifies the Board of Liquidation with any department of the State government, and the Constitution has nothing On the subject.
On the contrary, I find that it is a creation of a statute, or a body corporate, charged with certain ministerial duties, and clothed with a certain discretion or judicial power, susceptible of exercise “ in the first instance, but not final, recourse to the judicial courts of the State being expressly granted by the statute to compel it to fund or to prohibit it from funding, whenever the issue of fundability is raised.
It acts officially through the majority of its members. In its deliberations and its acts, therefore, I find that each member is the peer of each of his fellow members, for the law makes them equal; so that the voice and the vote of the Cotton Exchange president, or the Fiscal Agent, are as potent as the voice and the vote of the Governor of the State, or of the Speaker of the House, although the former are not classed as State officials, whereas the latter are officers of exalted rank.
. Nor do I find any action required, or duties imposed upon the Governor or Speaker of the House, as members of this board, which relate, in the slightest degree, to their legal or constitutional functions as Governor or Speaker.
The same may be said of each and every other member of the board, although he may be the incumbent of a State office.
I am, therefore, of the opinion that the defendant board is not a *663 part of the executive department, but rather that it is but a corporate body, a person in law, and therefore distinct from the members who compose it. R. O. O. 427, 435.
As such I find nothing in the law, organic or statutory, which •exempts it from judicial control, whenever, by its actions, any person alleges himself to have been deprived of a legal right.
The Article 11 of the Constitution declares that “all courts shall be open, and every person-for injury done him, in his rights,” etc., “ shall have adequate remedy, by due process of law, administered without denial or unreasonable delay.”
From the very statute creating the board, it seems to have been expressly subjected to judicial control in the matter of funding the State debt. For example, by the Act of 1874, if the board, through a majority of its members, reject an application to fund, the holder of the rejected bond, or warrant, can by suit compel the board to fund the same, if found by the court to be legal and valid.
Again, if a bond, offered for funding, be of a class or kind known as “tainted ” or “ questioned,” the board is powerless to fund it -until by judgment of the Supreme Court it shall have been declared legal and valid.
In every ease where an issue has been raised, or may be, as to the right to fund any bond or warrant of the State, the ultimate discretion, the absolute jus dieendi, is lodged, not in the Board of Liquidation, but in the judiciary of the State, the Supreme Court being the final arbiter. ■
And so, in accordance with this view, the judicial power has been repeatedly exercised to compel the board to fund, or to prohibit it from funding evidences of State indebtedness, presented for its action.
See 30 An. 816, 1356; 31 An. 273, 33 An. 124, 39 An. 327, 343, 395; 40 An. 321, 379; and many other cases.
As therefore the judicial power exists to compel or to prohibit action of the board on the vital issue of funding the State indebtedness, which was the sole object of its creation, and is the only reason for its existence; and if, as the statute declares, its members individually are subject to prosecution and punishment, before the courts, for unlawful acts of omission or of commission, in their conduct as such members, a fortiori the judicial authority must embrace, when *664 properly invoked, the minor power of compelling the board to assemble and discharge its duty, for otherwise the greater would not include the less.
II.
The matter remaining for consideration is, whether the tardiness of the relators in making their application, and the fact that owing to the absence of appropriation to meet the interest on relators’-bonds if they should be funded, their said application is so inopportune as to justify the board in refusing to meet and act thereon from consideration of public policy affecting the credit of the State.
On this issue, I think the Acts of 1874 and 1875, and the organic provisions adopted in 1874 and 1879, with reference to the State debt, constituted a distinctive offer made by the State to the holders of its obligations.
These measures, adopted by the people, were necessitated by the profligacy and corruption of years of usurpatory and alien government. They were the best the people felt themselves able , to do. The offer thereby made to the creditors of the State was a standing offer without limit as to time of acceptance so long as the limitation in the aggregate amount of the State debt was not exceeded, or so long perhaps as the period for the maturity of the'consolidated bonds had not lapsed.
This being the case, it would seem the ministerial duty of the Board of Liquidation, whenever the holder of a fundable bond or warrant tenders acceptance of the proffered terms of settement, to meet, consider and pass upon his offer, for the express object for which it was created, was and is to carry into practical operation. said measures of adjustment of the State debt.
With the questions of policy, or expediency, and whether the application of relators is opportune or otherwise, I think the board have nothing to do. ■ Surely not at this stage of the proceedings, if in any event; as to which, expression of opinion is not now required.
At all events, as judge, I have no power to deal with such considerations, for my plain and only duty is to find what the law declares, and as its organ to give voice to its behests.
The relators have made proper application to the board for the funding of their bonds. The board have refused to meet, and hear, and pass upon that application.
*665 This proceeding is not to compel the board to fund relators’ bonds, but to require them to assemble and either to fund or reject them.
To assemble and pass upon the application is a duty devolved by law upon the board, as to which they have no discretion within reasonable limits of time and public convenience, and, under O. P. 829-884, I think the relators are entitled to the peremptory writ. See 40 An. 895.
For these reasons, there must be judgment in favor of relators, against defendants individually as members of said board and as a board, making the mandamus peremptory, and fixing twenty days, dating from the day this judgment becomes final, as the time within which said board shall assemble, for consideration and action upon the application of relators.
Let judgment be entered accordingly.
[Signed]
Thos. O. W. Ellis, Judge.